The recording is started. Hear ye, hear ye. This Honorable Appellate Court for the Second Judicial District is now open. The Honorable Anne B. Jorgensen presiding. Your Honors, the first case on the docket is 2-20-0157 Mark Doyle, Plaintiff Appellee, the Executive Ethics Commission et al. Defendant's Appellant. Arguing for the Appellant, Bridget D. Batista. Arguing for the Appellee, Michael E. Bloom. All right, now are both sides ready to proceed then? All right, then Council, you may begin when you're ready. Council, you appear to be mute. There you go. No. Good morning. There you go. Good morning, Your Honors. May it please the Court, Assistant Attorney General Bridget D. Batista, on behalf of the Executive Ethics Commission, its Director, and the Executive Inspector General for the agencies of the Governor. Your Honors, the Circuit Court's decision limits the revolving door prohibition to prohibit only direct payments from a restricted entity. This Court should reject that interpretation of the Act. Instead, it should hold that an indirect payment can violate the Act when the former employee, as in this case, knows that the fees are from a restricted entity. The undisputed evidence demonstrates that Mr. Doyle violated the Act when he repeatedly sought payment of his invoices from an entity that he knew was restricted. Mr. Doyle's own emails demonstrate that he sought payment from CRAC only three months prior to the first of these emails. Mr. Doyle was specifically informed through the Commission's decision that he could not receive fees from CRAC for the one-year period following his employment with the State. Counsel, let me ask you this question. The contract is amended each year, this particular contract between the State and CRA. If it's amended every year, how does that affect the one-year prohibition with the plaintiff in this case? Yes, Your Honor, so the Act prohibits not only the contract, the entry into the contract, but also renewal and change orders. So that's specifically addressed by the Act. He would never be able to work for this company? After one year post-employment, he would be able to. The restriction is very... Regardless of the fact that it's amended each year, he could have waited a year. Yes, Your Honor, I appreciate your question. Yes, that's exactly right. So it is a two-year period, a span. One year prior to leaving employment, if the individual was substantially responsible for the award of a contract, then one year post-employment, that employee may not seek or receive fees from the entity. So it is a very narrow time frame. Nevertheless, although Mr. Doyle was informed through a decision that he ultimately did not challenge, so that is not in dispute here, that he was prohibited from receiving fees from CRAC. That decision... Yes. If I may just ask, let me just change the facts of the case to get the state's understanding. Let's say that Benbrook was only 5% of the revenues of the prohibited entity. Would you still be arguing that Doyle could not work for them under that circumstance? I think the question is, under the statute, the language is, and Your Honor, please, if I'm not addressing your question fully, let me know. But the question is, are the fees from the restricted entity? So here... Well, let's... Let me... Okay. My question was poorly phrased. So let's say that the restricted entity is only providing 5% of the revenues for the new company that Doyle's working for. Would that be a violation of the Ethics Act? Oh, I see. The restricted entity here, CRAC. So if only some of his compensation were coming... Let's say that CRAC only provides 5% of the revenues of Benbrook and Doyle goes to work for Benbrook. Would that be prohibited? I think, yes. Under these circumstances, yes. Even if it only constituted a partial amount of the compensation he was receiving, yes. The statute recognizes fees. So any sort of fees from that restricted entity, that is where the impropriety lies. Receiving fees from an entity that you were responsible for the award of a contract exceeding $25,000. And to be clear here, this contract was well in excess of 25,000. This was a contract that was worth nearly 1.2 million that was determined by commission that Mr. Doyle had substantial involvement in the award to CRAC. Well, let me follow up on that, counsel. If Mr. Doyle here works for any company that has received so much as a dollar from the prohibited corporation, he can't work for any of those companies? No, Your Honor. The question is, are the fees from the restricted entity? And in this case, yes. Right. So if CRA pays 100 companies in Illinois or Georgia for that matter, some fee per year, he's prohibited from working from all of those? No, Your Honor. And he would be prohibited. Where do we draw the line then? It's simply where the fees are coming from. The amount, he can work for Benbrook. And in fact, when we look at the circumstances here, past the one-year point post-employment, it did obtain $40,000 from Benbrook past the one-year period. And he was entitled to keep those fees. So Mr. Doyle obtained 190,000 in fees through his employment with Benbrook. Only the amount during the post one-year period was subject to the act. Post one year, he continued to work for Benbrook. That was appropriate. He received $40,000 under this arrangement through CRAC. He received $40,000, but because it was not within the scope of the statute, he was permitted to receive those fees. So there is not a per se ban on him working for an entity. It is simply that he would not be able to receive fees from a restricted entity through that company. And that is what this... Is your position because here it's pretty clear that he knew through those emails, it's certainly indicative that he knew exactly where his compensation was coming from. Yes, Your Honor. And that is the key inquiry knowledge. That is the standard by which this court should look at this case. And that is under the statute by its plain language. It's whether there was a knowing receipt of these fees. And under this evidence, there is no question for a trier fact that Mr. Doyle knew that these fees were from a restricted entity. That's why summary judgment was appropriate in this case. But rather than counter these facts, Mr. Doyle asks that this court exempt his conduct by interpreting the act such that an indirect payment from a restricted entity is exempted from the statute. And that is the only way in which direct payments can qualify. Ms. Batista, let's get to the interpretation of the statute, the interpretation as it was by the commission. Is it ambiguous or is it not ambiguous? Your Honor, it is not ambiguous. The question is, were the fees from CRAC? Here in his own words, Mr. Doyle asks that his invoices be paid from CRAC. So there's no question here. And indeed, when we look to the definitions supplied by Mr. Doyle in his own brief, one of the definitions is source. CRAC was the source of these fees. So under that definition, under any definition, these fees were from CRAC. And simply only the finding that a direct payment, you know, looking to who the entity was who signed the check as being the only relevant factor as what, you know, indicated that the circuit court was looking to be only the key factor, that allows for an absurd result that statutory construction principles counsel against. We cannot allow for an absurd result. And that would allow for an absurd result because you would simply look to who is the entity signing the check. And you could have an individual, this could be a workaround whereby it would be impossible to enforce this statute under that construction. And even if this court were to find that the alternative construction that Mr. Doyle proposes that only a direct payment can violate the act, it should not find that the commission's interpretation is unreasonable. As between two competing reasonable interpretations, this court should defer to that of the commission. But again, the interpretation by Mr. Doyle produces an absurd result. And in addition, under an additional construction principle, it does not give the term from its fullest meaning. We should give the term from its fullest meaning and not restrict it to only these direct payments, you know, an entity who signs the check. What is the rationale of this act? So your honor, the rationale is that an individual during state employment may be influenced by the promise of future payment, future job opportunities, post employment, and that that will infect the what should be a meritocracy of who receives these lucrative state contracts. And so that is the ill that is to be avoided here on the ethical obligation that should be upheld that these individuals and awarding significant state contracts should not be influenced at all, other than by who is the best awardee for that contract as opposed to who is going to benefit me post employment if I award to this particular entity. So it is the mere risk of that ethical breach that this act seeks to protect. And Mr. Doyle was aware of that. And he was aware when he submitted his application that he would be subject potentially to tripling of any compensation that he could obtain were he to be in violation of the act in the application. You're talking about the compensation. So now you're going into sanctions. Aren't these sanctions overly harsh? $154,000. They are not overly harsh. Because your honor, the amount is a function of Mr. Doyle's conduct. This is the amount that he wrongfully obtained. And indeed, when we look to the commission's weighing of aggravating and mitigating factors, the significant amount here was actually deemed to be an aggravating factor. This was a significant amount of money that was wrongfully taken knowingly from a restricted entity. So this is not a function of any draconian action on the part of the commission. It is a function of the fact that Mr. Doyle obtained a large amount of money in violation of the act. And I think it's a mitigation. He didn't just forge ahead. He did call the OEIG and try to get, you know, proceed with them, correct? As an initial matter, he did submit his revolving door application. However, that application for Benbrook made no mention of the CRAC Benbrook arrangement. It made no mention of the Georgia project. And post submission of that application, we have these series of emails where he asks that his fees, his invoices be paid from CRAC. Are there any standards? Wait a second. Are there any standards for what a petitioning person has to include in their request to the office? Your Honor, the idea it's to be the certification and, you know, it asks that this is true and accurate. And certainly it was both true and accurate. My question is, where do you draw the line? How did you put him on notice as to what he was to disclose? I think that the point I'm trying to make there, Your Honor, goes to knowledge. If he was in the position that he issue here, the question becomes why was he not more forthcoming with respect to, you know, the arrangement that this was going to be involving work for which he had just recently been told that he could not be a part of. And I think, again, you know, the inquiry is at the time that he sent these emails, repeatedly, he knew that these fees were coming from a restricted entity. So we look to those emails again, repeatedly, that he is actively seeking this payment. And that active seeking of payments weighed into the commission's decision for the penalty here. And when we look to this amount, yes, Your Honor. The CRAC application, the first one that was rejected, specifically referenced the Georgia project. Is that correct? That is my understanding. Whereas the Benbrook, yes. Left it out. Okay. Yes. It stated expand into new geographical areas. And I think when we look to the six-figure amount, we see, yes, it is a six-figure amount, but we look to the legislation was designed to regulate individuals who are at a high level within state employment. So the legislature knew that these were going to be individuals who may in a position to obtain lucrative compensation following post-employment. So it certainly is not anywhere out of the realm of, you know, foreseeability that when they were drafting this legislation, this is going to be potentially a six-figure annual compensation. And not only that, the legislature drafted this such that that amount could be tripled. Here, the amount was not to be appropriate to, you know, levy a fine that was equal to the amount that was taken. That is not an abuse of discretion. Again, under the abuse of discretion standard, as we know in our brief, it's the question is, could no reasonable person agree with that fine? And certainly here, far from that, many reasonable people would agree that this fine was reasonable. It's in accord with the language of the statute, which itself directs that the commission should look to the amount that would have been obtained for the annual period under that contract. And I think that language too of the statute, what would have been obtained. So in some circumstances, if the violation is discovered prior to receipt of the fees, a penalty can still be the amount that would have been obtained. And in this case, Mr. Doyle obtained those fees. So we have a circumstance in that way that we can look at the violation is even less severe than in the case where the discovery of the violation is made prior to receipt of those fees. So in some, your honors, the commission properly weighed the aggravating and mitigating factors to determine the amount that he wrongfully obtained constituted the appropriate fine. Again, this was not an abuse of discretion. And if this court, yes. Justice Shostak, any other questions for these reasons? We ask that the court reverse the circuit court and thereby uphold the determination of the commission. You will have an opportunity for rebuttal. Any further questions, Justice Shostak? None. Thank you, Justice Brennan. No, thank you. Counsel, then are you prepared to Okay. Good morning, all. And may it please the court. I'm Michael Bloom. I represent the appellee, Mark Doyle. Last year, the circuit court of King County determined that the revolving door prohibition is not in any way subject to all of the interpretations that the EEC attempted to place on it. That's a quote. Are we are we reviewing the circuit court's decision or are we reviewing the commission's decision? Your honor, you are in fact reviewing the commission's decision. Okay, so what the circuit court said is not really relevant. Okay, I will move on in that case. Just providing context to what we believe is a very unwarranted interpretation of the statute that the commission placed on it. Let's address the elephant in the room for you. The email that he sent to the IAG regarding how much he was supposed to get and where it was supposed to come from. Bennett, he sent it to these individuals telling them how to pay him once he got paid from CRA. How do you respond to that? What weight should be given to that as opposed to the weight that was given to it by the commission? Your honor, I think that no weight should be given to those emails because I don't believe that it shows that Mr. Doyle received anything from CRAC. We know that when the word from is used in a statute, it refers to a specific location. When the statute says that the compensation must come from the restricted entity, that means that it must come from the restricted entity. It must come directly from it. In this case, just put in the word directly. Where is the word directly or indirectly specified in the statute? It is not, your honor. If it's ambiguous, then don't we defer to the commission? No, because I don't believe it is ambiguous. I think based on what we've seen from the case law that we've cited, it's outside of Illinois, but it's persuasive precedent nevertheless. When the word from is used in a statute, it is referring to a specific location. In this case, it is undisputed that Mr. Doyle was employed by Benbrook. All of his wages, his compensation was paid by Benbrook. CRAC did not pay him anything. CRAC paid its subcontractor, its vendor, Benbrook, and Benbrook paid its employer contractor, Mr. Doyle. The flaw in the commission's decision was that it looked through that relationship without any basis. We know that compensation is a wage, it's a salary, it's benefits. We know that CRAC did not pay Mr. Doyle any compensation. Rather, this was an ordinary supply chain relationship. That's why it was so critical that the way that the commission handled everything, it denied Mr. Doyle's objections to this count because the state had alleged a subterfuge. In other words, there was a reason based on the pleadings to look through that relationship between CRAC to Benbrook to Mr. Doyle. We established a discovery that there was no subterfuge. Did Mr. Doyle tell the OEIG when he sent the letter working for Benbrook that they were going to contract with CRA? Your Honor, I believe you're referring to his application with the OEIG? Yeah, his application. Yes. No, he did not mention that. But I will say, how can you do indirectly that which you cannot do directly? And there's case law that says that. Correct. I believe you're referring to the Village of Kildare case, and I'm happy to discuss that case. In Village of Kildare, there was a law that said you are a municipality, there we go, a municipality cannot annex a tract of land greater than 10 acres. And so what the Village of Kildare said was we're going to circumvent that requirement by annexing three separate tracts of land that are each less than 10 acres. But in the aggregate, we're getting what we want to get done, which is to annex a property that's greater than 10. And so and that's why it's my earlier points about circumvention. That's why that's so critical. Because in this case, there was no attempt to circumvent. None? No, Your Honor. In his application, why didn't he just come clean and indicate that they were going to enter into a contract with CRA? If he's not trying to circumvent it, why didn't he just come clean and be honest? Your Honor, I don't think he was being dishonest. What he put in his application was exactly what was written in his contract with CRA. That's exactly what he contracted to do on Benbrook's behalf. And he also testified that his work, he did not believe was going to just be in the state of Georgia. He thought he was going to be helping Benbrook expand into other territories, just as he wrote in his application. And I also note that there was no finding here by the commission that there was even an attempt to obstruct the investigation. It denied the OEIG's motion for summary judgment on that. Those counts were withdrawn. It did not even rise to a refusal to cooperate. There was no finding of that sort. And so we do not believe that that application, the way he framed it, is a basis for this court to look through that relationship between CRAC, Benbrook, and Mr. Doyle. Mr. Bloom. Oh, I'm sorry. Go ahead, Justice Brennan. Mr. Bloom, I don't mean to cast aspersions to Mr. Doyle, and I'm not. But just looking at this statute and its purpose, more generally, it's not a surprise to anybody in this hearing that Illinois has a somewhat storied history of problematic things in this regard. And this is a pretty generous statute because the prohibition is only a year. But because it's only a year, doesn't it make sense to interpret from given the purpose of the statute to find why wasn't that a reasonable interpretation by the commission? Your Honor, I think that these things can all be true. I think from can be interpreted in a way that would prohibit a structured arrangement. I think, first of all, if a former state employee himself or herself creates an entity just for the purpose of being a conduit to avoid the statute, the commission court could absolutely pierce through that veil. There's no question. And then, as Your Honor's pointed out, in the Village of Kildare case, the court said, I believe it was the Illinois Supreme Court, they said, if you're going to try to circumvent a statute, that's not permissible either. And that's why we believe. And so to that point, if in a different case, the commission were to determine or in the state were to prove that there was a deliberate effort, that there was this conspiracy among people like Benbrook and CRAC to help Mr. Doyle do indirectly what he could not do directly, in that case, it's potential, there could be liability there. Our point here is that, first of all, that the commission summary judgment ruling completely ignored that whole inquiry. It had actually, the basis for its denial of our objections was that, yes, there could be a subterfuge. And in that case, we would look through these relationships. On summary judgment, it did a 180. It said, bad faith is not even relevant. We had proved, and the inspector general did not dispute that there was no circumvention. And on the summary judgment level, the commission said, oh no, now that's irrelevant. So he's liable merely because he worked for a subcontractor. And then in its final order, it departed again from that principle and found without holding a hearing that Benbrook did operate as nothing but a conduit and as a pass-through. And so we've made a due process argument regarding that as well. But now I'm getting a drift from your initial question. Thank you. I think you've kind of addressed everything. Let us, if you don't mind, and Justice Jorgensen, if you don't mind, let us proceed to the sanctions, basically, here. I know you think that they were certainly overly harsh, as you mentioned in your briefs. Again, taking the dollar amount that was wrongfully acquired, as they have found here, how is it unreasonable or harsh to fine him that amount that they allege that he illegally or improperly benefited from? And also in light of the fact that they could have tripled this dollar amount. How do we find that the commission abused their discretion in this fine? All right. Yes, Your Honor. That's a great point. They could have tripled the damages and they were authorized to levy the fine that they did under the statute. But there was no context to what they did. The commission seemingly arbitrarily ignored all of these mitigating factors that we cited. And it also, for the same reasons, the fine was unrelated to the purpose of statute. This statute is about corruption, as we've discussed earlier today. And there's no finding here of any corruption. There's no finding. First of all, there was no finding of circumvention. There was no finding that CRA improperly benefited from anything that Mr. Doyle did with the state. There was no finding of harm to anyone. There's no finding that Mr. Doyle misused state resources. There's no finding that he was anything but an honorable state employee. The state of Illinois was not harmed here in any sense. And so I think the court should look at the magnitude of this fine rather than whether the commission was authorized to do it. Because a fine of this magnitude, unless you're a professional athlete, is a substantially life-altering amount of money. The rationale behind the act, and you heard what Ms. DiBattista said the rationale behind the act was, also the rationale behind the act is to ensure that public officials adhere to the highest standards and avoid the appearance of impropriety, not use their position for private gain or advantage. So in this particular case, you can certainly argue that they were trying to have him adhere to the highest standards. And part of a sentence or part of a fine is also to send a message to the community or send a message to the rest of public employees so that they don't do this again. How was the court improper in doing that? Isn't that a relevant part of a sentencing or a fine, if you will? Your Honor, I respectfully disagree. I don't think it was necessary to send a message under these circumstances. I think if the conduct had been egregious at all, that's a case where you want to send a message. I think in this case, he believed he was in compliance with this statute. He was already working in the state of Georgia for IAG, which nobody has questioned. And at that point, CRAC's needs became more clear under its contract with Benbrook. And Benbrook, they hired Mr. Doyle to work for Benbrook in addition to IAG or in furtherance because he was already in Georgia. And they knew him. They liked his work. And he had skills that they needed for this task. In that regard, this just isn't a case where the state of Illinois needs to say, we need to throw the book at someone like this to send a message. In a different case, where Mr. Doyle either totally shirked his responsibilities under the revolving door prohibition, didn't send an application perhaps, or did affirmatively try to circumvent the act, I would say absolutely, a six-figure fine would be appropriate. But that did not occur here. Can I look at this sanction as the amount that was selected was really to recoup his ill-gotten gain? And if you take that off the table, the ill-gotten gain, his sanction was really zero. There was nothing in addition to the funding that he took inappropriately. I'm sorry, I don't understand your question. Here's my point. The amount they picked was his ill-gotten gain. Nothing in addition, no additional slap, if you will, or sanction or fine. Just you cannot keep the ill-gotten gain. Your Honor, I understand your point now. And I don't see a reason why the penalty needs to be tied exactly to the compensation. I know the statute puts it in terms of three times the compensation. The commission is authorized to levy a fine of $1,000 if it wants. It doesn't have to tie to the compensation. And I think the court should look at the context of the mitigating factors here in saying, okay, he earned $154,000, but he earned it in a situation where nobody was harmed. He didn't circumvent the statute. Are you arguing that in an ethics context, no harm, no foul? No, Your Honor, I'm not saying no harm, no foul. I'm saying that's a mitigating factor that should be considered among others. Because of the gravity of this fine, $154,000 is not a trivial amount of money. And so I think because the commission is authorized to levy a fine of significantly less, a fine that could match what the circumstances actually weren't. This was a man who thought he was in compliance with the statute and didn't try to circumvent the statute. Mr. Bloom, it's hard, frankly, for me to read the email and conclude that Mr. Doyle didn't know that he was in violation of the statute. Your Honor, I'm happy to speak to that. I think that goes towards how these relationships were formed in the ordinary course. He believed he was working for Benbrook, and Benbrook was working for CRC. And there was no deceit about that relationship. And so he was performing services for Benbrook. And initially, he didn't know whether those services, when he signed his contract, he didn't know whether those services were for DBHD itself, for CRAC. This was just an ordinary employment situation. And so yes, he ultimately understood that CRA was the contractor on top that was paying Benbrook. But at all times, he considered himself a Benbrook employee and enacted as such. But the email suggests that he also knew that unless and until CRAC provided the monies, he wasn't getting paid by Benbrook. That's correct, Your Honor. But that all I think that evidence is an ordinary supply chain relationship. Benbrook was retained by CRA. So naturally, it needed CRA to pay Benbrook in order for Benbrook to pay its labor force, Mr. Doyle. Thank you. Counsel, your time is almost up. So if you'd like to sum up your conclusions. Yes, Your Honor. And so just for the reasons mentioned, we believe that the state's proposed interpretation of the statute is overly broad. We believe that the one word from is used in the statute. It means compensation that must come directly from the restricted entity, which did not occur here. We also believe that this fine was overly harsh and that there was perhaps a due process violation in the way that the commission handled these proceedings. And for those reasons, we ask that this court affirm the determination of the circuit court. Thank you. And counsel, do you wish to offer a rebuttal? You're mute still. Yes, Your Honor. Thank you. Your Honor, my opposing counsel discusses elements of obstruction, conspiracy, allegations and counts with respect to investigation or obstructing the investigation were withdrawn. And importantly, with respect to conspiracy, this idea of subterfuge, those elements are not required to prove a violation under the statute. What is required is that the former state employee knowingly received fees for services from a restricted entity that occurred here. Had a conspiracy been shown that this arrangement was orchestrated, that there was subterfuges. In that instance, we would be in a different situation in terms of the penalty, perhaps in a situation of a tripled penalty or as the statute permits, criminal penalties. So simply because that was not shown, that does not mitigate the violation in this case where Mr. Doyle knowingly received fees for services from an entity that he had been told a mere months, approximately three months prior, he was not permitted to receive fees. And I noticed there were some questions regarding the ambiguity of the statute. Now, certainly if there it is determined that the statute is ambiguous, as your honors have noted, there should be a deference to the commission. But we would ask that in this circumstance, under these facts, there was no ambiguity. Mr. Doyle knew that he was receiving these fees from a restricted entity that should not in any way mitigate the fine in this case. Miss DeBattista, how do you respond to the fact that council indicates that they did not receive due process with respect to the summary judgment? That circumventing was not proven? Your honor, I believe my opposing counsel is referring to after the summary judgment determination was made, there was a separate order with respect to what fine to impose. Before reaching a weighing of aggravating and mitigating factors and setting out the case, the commission did use the word conduit and did use the word pass-through. But when we look to when the discipline was determined, there's no mention of those factors, no mention of a pass-through or conduit. So the question becomes when we look to there was a due process violation, was there prejudice? And we see here there was no prejudice when those factors, those mere mention of those terms did not weigh at all into the analysis of the appropriate penalty here. If this court were to find that further process is due, the remedy is not a reversal here, but rather a remand for further process. But as noted, because there's no prejudice, that is not required here. In addition, the fine was appropriate here. We have to, again, look to the purpose. It is to uphold the standards of ethical conduct on individuals who are entrusted with a large amount of public dollars. We're talking about contracts in excess of $25,000. And here, far above that, Mr. Doyle was actively responsible for an award of a nearly $1.2 million contract. These individuals should be held to a high standard. And again, it is a narrow time period. We're talking one year post-employment not to receive these fees. Nevertheless, knowing that Mr. Doyle within, again, I mentioned this several times now, within three months of knowing he cannot receive fees from CRAC is actively, not in one email. We cite several emails. This is not a one-time incident. Several emails asking for his fees to be paid from CRAC. And to Justice Jorgensen's point regarding the amount equaling the amount wrongfully obtained, yes, this is a case of first impression. Individuals could look to this case and see, at most, my fine, my penalty will be less than what I wrongfully obtained. This court should not find that here, assigning a fine that equals the amount wrongfully obtained was somehow an abuse of discretion. Finally, I note that the standard of overly harsh has been mentioned. That is something that this court in Sontag, which we cite in our brief, recognizes the overly harsh standard. However, the court here and there was careful to note that they will still look at the overly harsh standard of review in the context or that concept in the context of abuse of discretion. So this court should be guided by that abuse of discretion standard. Is this one that no reasonable person could agree with? And certainly here, it was reasonable. It was under the language of the statute itself that says to look to the amount that would have been obtained, not even the amount that hasn't obtained, that would have been obtained and the permission to look to that amount and in cases where it is required to triple that amount. So it cannot be said that this was not adhering to the statute and serving the purposes of the statute, which again is to uphold this high level of ethical conduct. And if the court has no further questions. Justice Shostak, any additional questions? No additional questions. Thank you. Thank you. No, thank you. All right, counsel. Thank you both very much for some adjourned until our next case and you will receive a written disposition in due course. Thank you.